UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HALLAM DYAL, | MEMORANDUM, ORDER & JUDGMENT |
| Plaintiff, | 16-CV-2133 |
| – against – | |
| SERGEANT KRISTEN ADAMES & POLICE OFFICER EDWANA JOHNSON | |
| Defendants. | |



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 0 7 2018 ★

BROOKLYN OFFICE

**JACK B. WEINSTEIN, Senior United States District Judge**

Table of Contents

I.   Introduction ............................................................................................................................1
II.  Facts .......................................................................................................................................2
III. Law .........................................................................................................................................4
   A. Summary Judgment Standard of Review ...........................................................................4
   B. False Arrest Under Section 1983 ........................................................................................5
      1. Elements of Assault ........................................................................................................6
      2. Elements of Larceny .......................................................................................................6
   C. Qualified Immunity .............................................................................................................7
IV.  Application of Facts to Law ..................................................................................................8
V.   Conclusion ............................................................................................................................10

I.   **Introduction**

This litigation arises from a garden variety "domestic dispute" to which the police were called, and then arrested the two disputants. Plaintiff, Hallam Dyal, sued two New York City Police Department officers, Sergeant Kristen Adames and Officer Edwana Johnson, for False Arrest. *See* 42 U.S.C. § 1983. Defendants move for summary judgment arguing that they had probable cause to arrest Mr. Dyal, or, at least, they had "arguable probable cause" for the arrest and are entitled to qualified immunity. The court provided a summary judgment hearing with all



1

and are entitled to qualified immunity. The court provided a summary judgment hearing with all the parties to the action present. Each was given an opportunity to tell his or her side of the story under oath.

Mr. Dyal was arrested on September 30, 2014 after he and his ex-girlfriend, Tracey Brown, had a dispute. Each independently placed a 911 call asking for help. The police arrived, investigated, deliberated, and arrested both parties. The officers acted on limited information: they arrived at the scene with competing allegations over the 911 network of crimes in progress. The female had a laceration on her hand. A window in the male's house was broken. The woman accused him of stealing her clothing. The man accused her of trespassing and damaging his property. The officers acted reasonably in arresting both people, leaving judgment about who should be prosecuted for what to the district attorney.

Mr. Dyal, plaintiff, acted as a reasonable citizen. He called the police after Ms. Brown arrived at his house without warning, and broke his window in anger. He awaited the police officers' arrival in his home. When they arrived he spoke with them calmly and asked them not to arrest Ms. Brown. Mr. Dyal was aggrieved and brings this action because, as he put it: "I only assumed that if you . . . stay in your house you couldn't get in any trouble, that's what I told my children, what I told my grandchildren. I just thought by telling the truth everything would be okay." Summary Judgment Hr'g Tr. ("Hr'g Tr.") 25:24-26:4, April 16, 2018. Ms. Brown did not sue.

Summary judgment is granted to defendants. Qualified immunity shields government officials from liability when they act reasonably and in accordance with the law. The case is dismissed.

## II. Facts

Mr. Dyal and Ms. Brown are each other's ex-boyfriend-ex-girlfriend. Defendant's Rule 56.1 Statement of Undisputed Facts, ECF No. 36 at ¶ 5, Dec. 8, 2017 ("Defs.' 56.1"). On September 30, 2014, Ms. Brown showed up at Mr. Dyal's residence to retrieve her belongings. Declaration of Tracey Brown, ECF No. 39, Ex. 2 at ¶ 1, Jan. 10, 2018 ("Brown Declaration"). Mr. Dyal told her that he was busy; he could not give her belongings back. Ms. Brown began banging on his window and broke it; Mr. Dyal called 911 asking for police help. *Id.* at ¶ 7-8. Ms. Brown separately called 911 to report that Mr. Dyal would not return her clothing, and asked for police assistance. *Id.*

Sergeant Kristen Adames and Officer Edwana Johnson ("Defendants") responded to the calls. Defs.' 56.1 at ¶ 9. Sergeant Adames observed a rag over Ms. Brown's hand that appeared to be covering a cut. *Id.* at ¶ 10. The officers claim that Ms. Brown told Sergeant Adames that Mr. Dyal had slammed the door on her hand. Arrest Record, ECF No. 35, Ex. I, p. 1, Sept. 30, 2014 ("Arrest Record"). Ms. Brown maintains that she did not tell the officers that Mr. Dyal slammed the door on her hand, but rather that the cut on her hand was from breaking the window. Brown Declaration at ¶ 2.

Defendants swear that Ms. Brown told Sergeant Adams that Mr. Dyal would not permit her to pick up her belongings. Defs.' 56.1 at ¶ 13. Mr. Dyal points out that this information is not mentioned in the Arrest Report. Plaintiff's Response to Defendant's 56.1, ECF No. 40 at ¶ 13, Jan. 18, 2018 ("Pl.'s Response"). It is undisputed, however, that Ms. Brown informed the 911 operator and officers that Mr. Dyal would not give her belongings back. Affidavit of Tracey Brown ("Brown Affidavit"), ECF No. 35, Ex. 6 at ¶ 10, Sept. 4, 2016 ("I then called 911 and told the operator that Mr. Dyal would not permit me to pick up my belongings."); *id.* at ¶ 12 ("I explained [to the officers] what happened and said that I want my stuff.").

3

Ms. Brown was arrested for breaking the window, and Mr. Dyal was arrested for assault. Defs.' 56.1 at ¶ 19. All charges were dismissed at arraignment. *Id.* at ¶ 23.

## III. Law

### A. Summary Judgment Standard of Review

Summary judgement is appropriate when, "after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." *Sledge v. Kooi,* 564 F.3d 105, 108 (2d Cir. 2009). The non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation omitted).

The Supreme Court has directed district courts to actively engage with cases at early procedural stages using their "judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *cf.* Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). It is this court's practice—and has been for some years—to provide parties an opportunity to be heard early in a litigation. *See* Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure,* 88 N.Y.U. L. Rev. 286, 344 n.214 (2013) (noting this court's approach of meeting with the parties before ruling on a motion to dismiss in order to get "a sense of the litigation").

When a dispositive motion is filed, this court requires the parties and their attorneys to appear for a hearing. These hearings—a mixture of attorney argument and witness testimony—allow the court to assess the case and provide litigants with a chance to state their position in the lawsuit in a way relying on the papers and arguments of counsel alone cannot achieve. Outstanding factual questions can be directed to the litigants, sometimes allowing the court to

efficiently decide motions on a more accurate factual record. These hearings also reassure the parties that it is the court itself—not a clerk—that is deciding the case after listening to them.

### B. False Arrest Under Section 1983

A plaintiff alleging false arrest must show "that the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Broughton v. State*, 37 N.Y.2d 451, 456 (1975). Brought in § 1983 suit, a false arrest claim stems from the "Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). Probable cause is a "complete defense." *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985).

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). The probable cause analysis is limited to facts known by the "arresting officer *at the time of the arrest*." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (emphasis added).

"Probable cause does not require absolute certainty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir.2003). "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness," *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)), unless the circumstances raise serious doubt as to the person's veracity, *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995).

"[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and [] it is not relevant whether probable cause existed with respect to *each individual*

5

*charge*, or, indeed, *any charge actually invoked* by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154 (emphasis added). The focus is on the "validity of the *arrest,* and not on the validity of each charge" chosen by the police under pressure of a quick decision in the field. *Id.* (emphasis added).

### 1. Elements of Assault

Under New York Law, a person is guilty of assault when: "(1) with intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument." N.Y.P.L. § 120.00.

### 2. Elements of Larceny

"A person steals property and commits larceny when, *with intent to deprive another* of property *or to appropriate* the same to himself or to a third person, he *wrongfully* takes, obtains or *withholds such property* from an owner thereof." N.Y.P.L § 155.05 (emphasis added).

"Deprive" means "(a) to withhold it or cause it to be withheld . . . permanently or for so extended a period or *under such circumstances that the major portion of its economic value or benefit is lost to him*, or (b) to *dispose* of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property." N.Y.P.L. § 155.00 (emphasis added).

"To 'appropriate' property of another to oneself or a third person means (a) to exercise control over it, or to aid a third person to exercise control over it, permanently or for so extended a period or *under such circumstances as to acquire the major portion of its economic value* or benefit, or (b) to dispose of the property for the benefit of oneself or a third person." *Id.* (emphasis added).

Property may be stolen even when a person comes into possession of the property lawfully. *See People v. Olivo*, 52 N.Y.2d 309, 317-18 (1981). Where a "defendant exercises dominion and control wholly inconsistent with the continued rights of the owner, and the other elements of the crime are present, a larceny has occurred." *Id.* at 318.

### C. Qualified Immunity

Qualified immunity "shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations omitted). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law [or] a mistake of fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).

For false arrest claims, an officer is entitled to qualified immunity if there is "arguable probable cause" for the arrest. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), *as amended* (Oct. 7, 2009). "Arguable probable cause . . . exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Id.* (quoting *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir.2007)) (emphasis added). Arguable probable causes exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).

Qualified immunity as a defense to § 1983 claims is not based on the text of the statute; it is a gloss added by the courts. *See* William Baude, *Is Qualified Immunity Unlawful?*, 106 Cal. L. Rev. 45, 50 (2018) ("Neither version of the text, you will notice if you wade through them, makes any reference to immunity."). It is a judicially crafted exception, derived from the principle that an officer should not be found liable when his or her conduct comports with objectively reasonable standards. *Id.* at 52-54 (examining *Pierson v. Ray*, 386 U.S. 547, 550 (1967)). It is not a good faith exception, but it is derived from concepts that would support such an exception.

Over the past several decades, the Supreme Court has shown increasing unwillingness to impose sanctions on defendants or state actors who violate the law but whose conduct does not indicate an unlawful intent. Aziz Z. Huq & Genevieve Lakier, *Apparent Fault*, 131 Harv. L. Rev. 1526, 1527 (2018).

> [T]he Court has refused to sanction these "apparently innocent" actors — so named because their mental culpability is not apparent from their actions. Instead, it has insisted on quite particular kinds of evidentiary showings that tend to demonstrate, either directly or indirectly, that the defendant or government official acted with a morally objectionable intent. More specifically, it has insisted on evidence that allows the Justices to conclude that the wrongdoer either knew or clearly should have known that his or her conduct was wrong. The result has been to make what we call "apparent fault" an increasingly important gatekeeper of civil and criminal liability in federal law.

*Id.*

### IV. Application of Facts to Law

The officers are entitled to qualified immunity because there was "arguable probable cause" for Mr. Dyal's arrest. *See Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), *as amended* (Oct. 7, 2009). The probable cause analysis is limited to facts known by the "arresting officer *at the time of the arrest.*" *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (emphasis added).

8

The officers' conduct was reasonable. They arrived at the scene following two persons' 911 calls. Mr. Dyal called to report that Ms. Brown broke his window; Ms. Brown told the 911 operator that Mr. Dyal would not return her belongings. Brown Affidavit at ¶ 10, 12.

At the time of the arrest, the officers only knew what they were told by the parties and what they could infer from the facts and circumstances they observed or were told after being directed to the scene of "the crimes" over the radio. The officers reasonably relied on Ms. Brown's claim and arrested Mr. Dyal. She claimed that he would not return her belongings. This is sufficient to support probable cause for larceny. *See* N.Y.P.L § 155.05 (emphasis added) ("A person steals property and commits larceny when, *with intent to deprive another* of property *or to appropriate* the same to himself or to a third person, he *wrongfully* takes, obtains or *withholds such property* from an owner thereof.").

It may be argued that the truthfulness of Ms. Brown's claim was doubtful. Officers of reasonable competence and good faith, however, could disagree on whether Ms. Brown's claim was believable because of the competing 911 calls. It is undisputed that Mr. Dyal had Ms. Brown's possessions in his home. There was as much reason to believe Mr. Dyal's account of the facts (that he merely stated, "[n]ow is not a good time") as Ms. Brown's (that he refused to return her belongings).

Mr. Dyal, an African American man, acted as a reasonable citizen. As he stated, "I only assumed that if you . . . stay in your house you couldn't get in any trouble, that's what I told my children, what I told my grandchildren. I just thought by telling the truth everything would be okay." Hr'g Tr. 25:24-26:4. He thought he acted precisely the way society tells people to behave. *Cf.* I. Bennett Capers, *Criminal Procedure And The Good Citizen* 118 Columbia L. Rev. 653, 696-97 ("[R]acial minorities in particular find themselves facing a double-bind: To be

regarded as 'good citizens' deserving of the treatment routinely accorded to privileged whites, these minority citizens have to first abjure or at least downplay their actual citizenship rights. And if they do this, they never get to fully enjoy them. They must perform what I will term 'citizenship work'—being extra deferential, acquiescing to demands, relinquishing citizenship rights. Perhaps nothing better illustrates this extra 'citizenship work' than 'the talk' that so many black and Ms. Brown parents find themselves having to give their children.").

Section 1983 does not provide a remedy absent misconduct of a state official, even if the aggrieved person acted reasonably. The two police officers (one a sergeant) acted reasonably.

V. **Conclusion**

Defendants' motion for summary judgment is granted. The case is dismissed. The clerk of the court is directed to enter judgment for defendants.

No costs or disbursements. All parties acted reasonably at the event, and in bringing and defending the present suit.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: May 7, 2018
Brooklyn, New York